

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN L. ACOSTA, | ) |
| Plaintiff, | ) No. 07 C 1641 |
| v. | ) Magistrate Judge Maria Valdez |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff John L. Acosta's claim for Supplemental Security Income and Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Acosta's motion for summary judgment [Doc. No. 15] is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 17] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings.

## I. PROCEDURAL HISTORY

Acosta originally applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 24, 2005, alleging disability since September 15, 2004. (R. 26.) The application was denied on August 3, 2005, and upon reconsideration on October 28, 2005. (*Id.*) Acosta filed a timely request for a hearing by an Administrative Law Judge ("ALJ"),

which was held on May 2, 2006. (*Id.*) Acosta personally appeared and testified at the hearing and was represented by counsel. (*Id.*) A medical expert and a vocational expert also testified at the hearing. (*Id.*)

On May 18, 2006, the ALJ denied Acosta's claim for benefits and found him not disabled under the Social Security Act. (R. 32.) The Social Security Administration Appeals Council denied Acosta's request for review on January 19, 2007, (R. 4-5), leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND

### A. Background

Acosta was born on November 6, 1964. (R. 31.) At the time of the hearing he was thirty-nine years old. (*Id.*) He is six feet one inch tall and weighs 600 pounds. (R. 28.) He attended school through the eleventh grade. (R. 214.) Acosta had been employed as a factory laborer, cook, and auto condition writer. (R. 31.)

He claims disability beginning September 15, 2004 because of chronic obstructive pulmonary disease, asthma, edema, chronic heart failure, sleep apnea, borderline intellectual functioning, and obesity. (R. 26, 28.) He was hospitalized in June of 2004 and diagnosed with congestive heart failure. (R. 28.)

### B. Testimony and Medical Evidence

#### 1. *Acosta's Testimony*

Acosta testified at the hearing that he weighs about 600 pounds and was recommended for weight loss surgery because he would otherwise not be expected to live past age forty-five, but he did not have any insurance to pay for it. (R. 189-90.) While he had tried to eat less, there was no progress. (R. 193.) Acosta stated that he cannot drive for more than twenty or twenty-five minutes due to leg pain. (R. 199, 202.) He said when he goes to the grocery store he needs to lean on the cart to reduce the pressure on his legs, and that even with such support, he becomes exhausted in approximately thirty minutes. (R. 202-03.) He also can only sit for about forty-five minutes before he feels a shooting pain in his foot and needs to lie down. (R. 203.) He noted his legs are usually swollen but that they swell even more after sitting and even standing such that he needs to elevate them in order to relieve the pain. (R. 202.) He reported that he must keep his legs elevated for about three or four hours before the pain subsides. (R. 210.) He said that this happens more than once a day, and he typically lies down with his legs elevated for about six hours a day. (*Id.*) He testified that he wants to sleep all of the time and that there are days when he feels so bad he would not be able to work. (R. 201, 210.)

He testified that his most recent job was working as a general laborer, but he felt weighted down because of his legs and he found it hard to walk; this job was terminated in September 2001. (R. 196-97.) Acosta stated that he cannot or stand for prolonged periods of time, but he said that he "probably could" do a job where he could alternate sitting and standing whenever he needed to. (R. 199-200.) However, when asked whether he could do a job eight

3

hours a day, five days a week, and fifty weeks a year, Acosta claimed that he could not because it would be too painful. (R. 203-04.)

### 2. *Medical Evidence*

#### a. **DDS Consultants**

On July 28, 2005 and October 26, 2005, RFC evaluations were completed by two non-treating, non-examining Disability Determination Service ("DDS") medical consultants. (R. 132-47.) The first medical consultant, Charles Kenney, noted that Acosta could frequently lift up to ten pounds, could stand or walk for about six hours in a workday and could sit for six hours a workday with normal breaks, and had no other postural limitations other than not being able to climb. (R. 132-39.) The second medical consultant, Frank Jimenez, indicated that Acosta could frequently lift less than ten pounds, could stand or walk about two hours in a workday and could sit for about six hours with normal breaks, and found that Acosta could only occasionally stoop, kneel, crouch, or crawl. (R. 140-47.)

#### b. **Medical Expert's Testimony**

Dr. Sheldon Slodki testified as the medical expert ("ME") at the hearing. (R. 26.) The ME testified that the prominent left hilar marking around the heart from the x-ray supported a congestive heart failure diagnosis even though his cardiac-thoracic ratio of .44 was within the upper limits of what is normal. (R. 194-95.) The record reflects that edema in the leg was present but not extremely severe. (R. 192.) The ME testified that Acosta did not meet Listing 4.11 for chronic venous sufficiency even though he had some edema in his legs, as it did not cover more than two thirds of the leg and ankle, there was no deep vein thrombosis, nor was there any other documentation of venous obstruction. (R. 193, 204.) The ME opined that the

4

swelling of the legs could have been a result of his morbid obesity; however, he noted that it was a multi-factorial phenomenon and could be connected with other conditions such as heart failure or lymphedema. (R. 205.) The ME testified that elevating his legs would provide some relief, but how much relief is subjective, depending upon a person's pain level. (R. 207-08.)

The ME concluded that Acosta did not meet the Listings for asthma, chronic venous insufficiency, hypertension, congestive heart failure, and obstructive sleep apnea, and additionally that there is no listing for morbid obesity. (R. 204.) The ME explained there was no record of hospitalization for asthma, no pulmonary function test, and no record of heart attacks. (*Id.*) There was no echocardiogram that would be necessary to establish a Listing for congestive heart failure. (*Id.*) He did not have a polysomnogram for constructive sleep apnea, and his arterial blood gas test did not meet the levels required by the Listing. (R. 205.) The ME agreed with the DDS evaluation that Acosta's residual functional capacity was sedentary with postural limits; lifting ten to twenty pounds; standing and walking for only two hours; and no climbing of ropes, ladders, or scaffolds. (R. 204-05.)

### 3. *Vocational Expert's Testimony*

Julie Bose testified as the vocational expert ("VE"). (R. 26.) The VE testified that Acosta's past relevant work was mostly unskilled and either light or medium in physical demand. (R. 212.) The ALJ asked the VE whether an individual who could not climb ropes, ladders, or scaffolds; was limited to sedentary exertional work; could not work at unprotected heights or around dangerous machines, open flames, water, and no exposure to respiratory irritants, noxious fumes and odors could return to his past work. (*Id.*) The VE testified that this individual could not perform his past work. (*Id.*) The ALJ asked the VE if there was any other work in the region

that this individual, with the same set of limitations, could do. (R. 212-13.) The VE testified that the individual could perform jobs that were sedentary and unskilled such as a telephone clerk, with approximately 8,000 to 8,800 jobs in the Chicago metropolitan area; an operator, with about 2,000 to 2,500 jobs in the Chicago metropolitan area; and a food and beverage order clerk with approximately 2,000 to 2,500 jobs in the Chicago metropolitan area. (R. 213.) The ALJ then amended his original set of limitations to include an individual who had to lie down at least one time for three hours during the work day. (*Id.*) The VE concluded that those jobs listed and others would be eliminated. (*Id.*) The ALJ also added the limitation of an individual missing three days a month because of illness, and the VE testified that such a person would not be able to perform those jobs listed. (R. 214.) When the VE expert was questioned by Acosta's attorney about how the need to elevate one's legs would affect an employee's work, the VE responded that such a person would not be capable of performing sedentary, unskilled work because he could not maintain a position at a workbench. (R. 217.)

### C. ALJ Decision

The ALJ found that Acosta had not engaged in substantial gainful activity at any relevant time. (R. 28.) The ALJ found that Acosta had severe impairments from obesity, chronic obstructive pulmonary disease, asthma, edema, chronic heart failure, sleep apnea, and borderline intellectual functioning. (*Id.*) However, the ALJ found that these conditions did not meet or medically equal Listings 3.01, 3.03, 4.01, and 4.11. (*Id.*) The ALJ cited a lack of medical evidence for Listings 3.02, 3.04, and 4.11, and found that there was no medical evidence of Listing 3.03 because there was no documentation of asthma attacks that occurred at least six times a year or once every two months, even though there was prescribed treatment. (R. 29.)

6

The ALJ found that Acosta had the following RFC: simple routine sedentary work, lifting no more than ten pounds at a time, no more than two out of the eight hour workday to walk or stand, sitting about six hours per workday, with the limitations that he could not climb ropes, ladders, or scaffolds, or have any concentrated exposure to noxious fumes, odors, or other respiratory irritants. (R. 30.) To determine the RFC, the ALJ considered Acosta's testimony, the objective medical evidence, and opinion evidence from the experts. (*Id.*) The ALJ found that Acosta's impairments were expected, but the intensity, duration, and limiting effects of the impairments were not entirely credible from his testimony. (*Id.*)

The ALJ found that Acosta could not perform any past relevant work. (R. 31.) The ALJ further concluded that when considering his age, education, work experience, and RFC, that there are jobs in significant numbers in the national economy that Acosta could perform. (*Id.*) In making this finding, the ALJ found that Acosta could not perform the full range of sedentary work due to additional limitations, but that according to the vocational expert's testimony, substantial jobs existed even when all of Acosta's limitations were considered. (R. 32.) Consequently, the ALJ ruled that Acosta was not disabled under the Social Security Act. (*Id.*)

### III. DISCUSSION

#### A. ALJ Legal Standard

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42. U.S.C. § 423(d)(1)(a). In order to

7

determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

### B. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are support by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d. 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the

Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

C.   **Analysis**

While the ALJ found that Acosta could not perform his past work, he concluded that Acosta could perform simple routine sedentary work and that there were significant numbers of such jobs in the regional economy, which led to the ALJ's finding that Acosta was "not disabled" at a Step 5 in the evaluation process. (R. 30-32.) The ALJ based his RFC finding on the medical evidence and opinion evidence in the record as well as his conclusion that Acosta's testimony regarding the intensity, duration, and limiting effects of the symptoms was not entirely credible. (R. 30.) In determining that Acosta could perform a significant number of jobs in the economy,

the ALJ stated that he relied upon the VE's answers to his hypothetical questions incorporating the RFC and Acosta's additional limitations. (R. 31-32.)

Acosta argues that the ALJ's decision was in error for the following reasons: (1) at step 3 of the disability evaluation process, the ALJ failed to consider whether Acosta's combination of impairments medically equaled a listing; (2) the ALJ did not explain why he found that Acosta's testimony about his symptoms was not credible; and (3) the ALJ did not include all of Acosta's limitations in the hypotheticals posed to the VE.

### 1. *Combination of Impairments*

Acosta first argues that the ALJ failed to consider the combination of Acosta's impairments at step 3 of the disability evaluation process. Acosta points that the ALJ ruled that the medical evidence failed to establish the requirements for each listing, but the ALJ did not consider whether the combination of his conditions, in particular obesity, would meet a Listing. The Commissioner responds that the ME was asked by Acosta's attorney if he considered the combination of impairments, and he testified that he did. The Commissioner further argues that it was reasonable for the ALJ to rely on the ME's testimony that no combination of impairments met a Listing because Acosta did not submit any significant evidence to the contrary.

The ALJ is required to consider the claimant's condition as a whole, considering the aggregate effect of all impairments, even impairments that by themselves are not severe. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); 20 C.F.R. § 404.1526(b)(3). Even though obesity itself is not an impairment, the ALJ must determine the effect of obesity on a disability. *Gentle v. Barnhart*, 430 F.3d 865, 868

10

(7th Cir. 2005); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 802-03 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).

Acosta argues that the ALJ's lack of discussion of the combination of impairments was in error and should be remanded, relying upon *Clifford*. In that case, the claimant, who was obese, claimed disability because of conditions related to leg pain, arthritis, and high blood pressure. 227 F.3d at 866-67. The court found that the ALJ failed to consider the effect of claimant's weight on her overall condition. *Id.* at 873. The court held that despite numerous references to claimant's weight problem, the record did not indicate whether the ALJ properly considered the aggregate effect of her obesity on her overall condition. *Id.*

In this case, the ALJ found the claimant to be obese. (R. 28.) The ALJ also found that Acosta did not have an impairment or combination of impairments that meets or medically equals a listing. (R. 29.) While the ALJ gave a detailed explanation of why Acosta did not meet each listing individually, he did not discuss any combination of impairments or the effect of the claimant's obesity on the other impairments. (R. 29.) The ALJ did not ask the ME whether the impairments taken in combination would equal a Listing, and although the Commissioner argues that Acosta's attorney asked about the combination of impairments, a portion of the question is inaudible in the transcript.[1] (R. 207.) This Court cannot conclude from the testimony in the record that the ME: (1) considered the impairments in combination, and (2) concluded that the combination of impairments did not meet or equal a Listing. In any event, the ALJ's ruling does not indicate whether he even relied on the ME's testimony on this issue. Without the reasoning

---

[1] The relevant portion of the transcript reads: "Q: Now, of course, Doctor, you said it doesn't meet or equal any listings, and I'll just ask you to (INAUDIBLE) considering them in combination as well a [sic] separately. A: Yes." (R. 207.)

11

behind the ALJ's conclusion, the Court cannot conduct a meaningful review of the ALJ's ultimate finding that the combination of impairments did not equal a Listing. The issue therefore must be remanded to the Commissioner.

### 2. *RFC Determination*

Second, Acosta argues that the ALJ's RFC determination was in error, because it did not include all of the claimant's limitations or his ability to sustain full-time work due to the ALJ's conclusion that the claimant's testimony as to the nature and severity of his impairments was not credible. The RFC is a measurement showing what an individual is capable of despite his limitations in order to determine what type of work the claimant would be able to complete. 20 C.F.R. § 404.1520(a)(4); SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996). The RFC is based on all the relevant evidence in the record, including all allegations of physical and mental limitations. 20 C.F.R. §404.1545(a); SSR 96-8P. Furthermore, there must be an explanation tying the medical and nonmedical evidence to each conclusion. SSR 96-8P. The ALJ's finding of the claimant's RFC must be supported by substantial evidence in the record, and the ALJ must articulate why he rejected significant conflicting evidence. *Clifford*, 877 F.3d at 873-74.

The ALJ found that Acosta had the RFC to perform simple routine sedentary work, lifting no more than ten pounds at a time, no more than two hours out of the eight hour workday to walk or stand, sitting about six hours per workday, with the limitations that he could not climb ropes, ladders, or scaffolds, or have any concentrated exposure to noxious fumes, odors, or other respiratory irritants. (R. 30.) The ALJ stated that his RFC determination was based upon the objective medical evidence in the record and the RFC conclusions made by the DDS physicians. (*Id.*) The ALJ's finding expressly discounted Acosta's subjective complaints "concerning the

12

intensity, duration and limiting effects" of his symptoms, finding that his statements "are not entirely credible." (*Id.*)

Acosta challenges the ALJ's credibility finding. An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). When an impairment is primarily based on a claimant's testimony, the ALJ makes a credibility determination and may conclude that the impairment was exaggerated. *See Diaz v. Charter*, 55 F.3d 300, 307 (7th Cir. 1995). However, the ALJ may not discredit the claimant's testimony relating to his subjective symptoms merely because it is unsupported by objective evidence. *See Moss v. Astrue*, ___ F.3d ___, No. 08-1533, 2009 WL 33546, at *5 (7th Cir. Feb. 5, 2009); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2001). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88); *see also Moss*, 2009 WL 33546, at *5 ("If the medical record does not corroborate the level of pain reported by the claimant, the ALJ must develop the record and seek information about the severity of the pain and its effects on the applicant.").

Moreover, the absence of objective medical evidence supporting the subjective complaint is only one factor to be considered in the credibility determination. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). The ALJ must also consider: "(1) the claimant's daily activity; (2) the

duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Id.*

The ALJ concluded that Acosta's testimony regarding the intensity, duration, and limiting effects of his symptoms was not entirely credible even though he agreed that the claimant's impairments could produce the stated symptoms. (R. 30.) However, this is the extent to which the ALJ explains his decision, and he does not indicate which of the required factors, if any, he considered. There is also no medical evidence in the record contradicting Acosta's testimony that he needs to elevate his legs and alternate between sitting and standing.

Because the RFC determination takes into account both the medical evidence *and* the claimant's testimony regarding his limitations, the issue of Acosta's credibility is highly relevant to the ALJ's RFC finding. Accordingly, the matter must be remanded to all the ALJ to fully explore the issue of Acosta's credibility as it relates to the RFC determination.

### 3. *VE Testimony*

Acosta finally argues that the ALJ failed to incorporate all of his relevant limitations in the hypothetical posed to the VE. In particular, the ALJ did not include Acosta's need to alternate between sitting and standing and his need to lie down and elevate his legs.

The relevance of the VE's testimony depends upon the ALJ's RFC and credibility determinations. *Armstrong v. Barnhart*, 434 F. Supp. 2d 543, 554 (N.D. Ill. 2006). An ALJ's hypothetical questions posed to vocational experts typically must include all limitations supported by medical evidence in the record. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). However, an incomplete hypothetical is not error when the expert independently reviews the record and was present

14

during the hearing to learn of all of the limitations. *Young*, 362 F.3d at 1003. Furthermore, if the ALJ concludes that the claimant does not have a particular set of limitations, then the VE's testimony regarding those limitations is not relevant. *Chrisman v. Astrue*, 487 F.Supp.2d 992, 1002 (N.D. Ill. 2007).

The ALJ did not find that Acosta needed to elevate his legs, alternate between sitting and standing, or lie down during the day, but his conclusion was based upon his finding that Acosta's testimony relating to those limitations was not credible. (R. 26-32.) The VE's testimony suggests that Acosta may have been found to be disabled if the ALJ had accepted Acosta's testimony and incorporated it into his RFC finding.[2] (R. 213, 216-17.) The ALJ's credibility determination therefore may affect the relevance of the VE's testimony on remand.

## CONCLUSION

For the foregoing reasons, Acosta's motion for summary judgment [Doc. No. 15] is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 17] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings.

---

[2] Question by ALJ: "Say the same individual had to lie down during the workday at least one time for three hours, is this going to knock him out of those jobs or any other job?" Answer by VE: "That would eliminate these jobs as well as all other employment." (R. 213.)

The VE later testified that "I find people who have to elevate their legs for any substantial time at the work [s]ite is [sic] ruled out of sedentary, unskilled because they cannot position their arms to be able to work at a workbench or worktable." (R. 217.)

15

SO ORDERED.

DATE: 2/13/09

ENTERED:

*Maria Valdez* (signature)

HON. MARIA VALDEZ
United States Magistrate Judge